IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

HONEY HOLDINGS I, LTD.,    §
                                §
              Plaintiff,    §
                                §
VS.                       §   CIVIL ACTION G-14-0240
                                §
ALFRED L. WOLFF, INC., et al.,  §
                                §
             Defendants.   §

**OPINION AND ORDER OF REMAND**

The above referenced cause, removed by Defendant Bees Brothers, LLC ("Bees Brothers") from the 334th Judicial District Court in Chambers County, Texas on both federal question jurisdiction, 28 U.S.C. § 1331, and diversity jurisdiction, 28 U.S.C. § 1332(a)(1), purportedly seeks a declaration of the rights, remedies, and obligations of the parties (including the agreements, representations, and warranties to defend, indemnify, and hold HHI harmless)[1] under various different purchase orders ("P.O.s") for foreign origin honey bought by Plaintiff Honey

---

[1] HHI objects to Bees Brothers' attempts to narrow its causes of action against Bees Brothers to the enforceability of only the indemnity provision in the November 2011 purchase order ("P.O.") between HHI and Bees Brothers. HHI claims that its request for declaratory relief applies to the validity of the whole agreement, not merely the indemnity provision, and includes, but is not limited to, the duties to defend claims arising out of the honey subsequently sold by HHI to food processors, to indemnify HHI for claims arising out of the honey sold by HHI, and to purchase insurance to cover Removing Defendant's obligations under the P.O. Ex. 1-A, paragraph labeled "Indemnification." The same applies to the P.O.s with the other Defendants.

-1-

Holding I, Ltd. ("HHI")[2] from each of the Defendants ("Supplying Defendants") other than the Burns Defendants.[3] *Inter alia*, pending before the Court in the instant suit is HHI's motion to remand (#26).

Because the Court must determine that it has subject matter jurisdiction before it can rule on other matters, the Court addresses HHI's motion to remand before numerous other pending motions.  After reviewing the record and the applicable law, for the reasons state in this document, the Court concludes that the motion to remand should be granted.

**HHI's Original Petition (#1-1)**

HHI alleges that the Supplying Defendants made representations and warranties about the foreign origin of honey that they supplied to HHI, including but not limited to the following:  (1) that the honey they supplied complied with the definition of origin in U.S. Customs law and other applicable regulations and statues; (2) that

---

[2] HHI buys and then resells bulk honey as a food ingredient to food processors in the United States. Declaration of Gerald Dale Murphy, II, Senior Vice President of HHI, #26-1.

[3] According to the Original Petition (#1-1), the claims against the Burns Defendants (Tommy Burns, LP (f/k/a Hoyt's Honey Farm, LLP), Tommy Burns, Anna Burns, and Tommy Burns Investments, LLC., "Sellers") arise out of HHI's purchase of assets under a Real Estate and Asset Purchase Agreement ("Agreement") entered into on or around September 26, 2003.  Ex. 0-1 to the Original Petition (#1-1).  The Petition states that these Sellers agreed to indemnify and defend HHI from claims arising from the sale by HHI of honey imported from China and sold to HHI by these Sellers before the existence of the Agreement.

the honey was not adulterated or misbranded within the meaning of the Federal Food, Drug & Cosmetic Act and any similar state or local statute or regulation; (3) that Supplying Defendants guaranteed, assured and indemnified HHI from all liability, loss, damages and expenses, including attorney fees, because of the failure of the supplied honey to conform to the promises and warranties in the purchase order; (4) that Supplying Defendants agreed, promised and warranted to hold HHI harmless from all loss, liability, damages and claims for damages, suits, recoveries, judgments or executions which may be brought or arise from the sale of the honey they supplied; and (5) that Supplying Defendants agreed, promised, warranted, and guaranteed to maintain comprehensive liability insurance, including products liability insurance.

HHI explains that there is a consolidated class action filed in the United States District Court for the Northern District of Illinois against HHI and others by domestic honey producers asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. §§ 1962 (c) and (d), for false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and common law misrepresentation and unjust enrichment. *In re Honey Transshipping Litig.*, Case No. 13-cv-2905 (Honorable Judge Joan B. Gottschall, presiding); Murphy Decl., #26-1. HHI contends that Defendants' obligations with regard to these

suits arise under the common law and the contracts with HHI that each Defendant entered, on which HHI seeks declaratory relief here. Copies attached to the Original Petition:  Exhibits A-1, A-2, A-3 (Defendant Alfred L. Wolff, Inc.); B-1, B-2, B-3, and B-4 (Bees Brothers, f/k/a MYM Trading, LLC); C-1, C-2, C-3 (Brightmin Enterprizes, LLC); D-1, D-2, and D-3 (China Industrial Manufacturing Group, Inc. ("CIMG")); E-1 and E-2 (China Products, NA, Inc.); F-1, F-2, F-3. and F-4 (Eastin Wells, Inc.); G-1, G-2. G-3 (Ecotrade International, Inc.); H-1, H-2, and H-3 (Ergogenic Nutrition); I-1, I-2, and I-3 (Four Seasons Food Distributing, Inc.); J-1, J-2 and J-3 (National Commodities Company); K-1, K-2, and K-3 (Odem International, Inc.); L-1 and L-2 (Premium Food Sales, Inc.); M-1, M-2, and M-3 (Sunland International Trading, Inc.); N-1, N-2 and N-4 (Texas Boga, Inc.); and 0-1, Real Estate and Asset Purchase Agreement (Burns Defendants).

The Original Petition, ¶ 17, p.5, requests

a declaration of the rights, remedies, and obligations of the parties (including each Defendant's obligation to indemnify and defend HHI) under the contractual relationship between each Defendant and HHI in the context of loss suffered by HHI and claims asserted in certain lawsuits filed against HHI concerning the sources and the contents of certain honey Defendants sold to HHI. Further, Plaintiff seeks a judgement awarding such other relief as permitted by law under the agreements at issue, including for the enforcement and or breach thereof.

**Applicable Law**

-4-

Under 28 U.S.C. § 1441(a)[4] any state court action over which federal courts would have original jurisdiction may be removed from state to federal court. *Gasch v. Hartford Accident & Indemnity Co.*, 491 F.3d 278, 282 (5th Cir. 2007; *Guttierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008)("A district court has removal jurisdiction in any case where it has original jurisdiction."). The original jurisdiction may be federal question jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.") or diversity jurisdiction under 28 U.S.C. § 1332(a) (where there is complete diversity of citizenship between the sides and the amount in controversy exceeds the sum of $75,000.00, excluding interest and costs).[5]

---

[4] Title 28 U.S.C. § 1441(a) states, "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

[5] Section 1332(a) and (c) provide in relevant part,

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a

-5-

The right to remove depends upon the plaintiff's pleading at the time of the petition for removal. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537-38 (1939); *Cavallini v. State Farm Mutual Auto Ins.*, 44 F.3d 256, 264 (5th Cir. 1995); *Ford v. Property & Cas. Ins. Co. of Hartford*, No. Civ. A. H-09-1731, 2009 WL 4825222, *2 (S.D. Tex. Dec. 9, 2009).

The removing party bears the burden of showing that subject matter jurisdiction exists and that removal was proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Any doubts are construed against removal because the removal statute is strictly construed in favor of remand. *Id.*

A district court has original federal question jurisdiction over "all civil actions arising under the Constitution, laws or

---

State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States. . . .

(c) For purposes of this section and section 1441 of this title--

(1) a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . .

treaties of the United States." 28 U.S.C. § 1331. Under the well-pleaded complaint rule, "a federal court has original or removal jurisdiction only if a federal question appears on the face of the plaintiff's well-pleaded complaint" and "generally there is no federal jurisdiction if the plaintiff properly pleads only a state law cause of action." *Guttierrez*, 543 F.3d at 251-52. "A federal question exists 'only [in those cases in which a well-pleaded complaint established either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Singh v. Duane Morris, LLP*, 538 F.3d 335, 337-38 (5th Cir. 2008), *citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)(construing § 1331), and *Christianson v. Cold Indus. Operating Corp.*, 486 U.S. 800, 809 (1988)(construing § 1338(a)).[6] "[T]he fact that federal law may provide a defense to a state claim is insufficient to establish federal question jurisdiction. *Bernhard v. Whitney Nat'l Bank*, 253 F.3d 546, 550-51 (5th Cir. 2008).

"'A corollary to the well-pleaded complaint doctrine is that Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Guttierrez*, 543 F.3d at 252, *quoting*

---

[6] For more detailed discussion of federal question jurisdiction, *see Singh*, 538 F.3d at 337-40.

*Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000). Complete preemption creates federal removal jurisdiction, while ordinary preemption, which is a federal defense and may arise by express statutory provision or by a direct conflict between the operation of federal and state law, but does not appear on the face of the complaint, does not create removal jurisdiction. *Id.* at 252.

The United States Constitution, Article II § 2, cl. 2, gives to the Executive Branch the "'[p]ower, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur.'" *In re World Imports. Ltd.*, 511 B.R. 738, 742 (Bkrtcy. E.D. Pa. 2014). The Constitution places a treaty "'on the same footing, and in order of like obligation, with an act of legislation; both are declared . . . to be the supreme law of the land, and no superior efficacy is give to either over the other.'" *Id., quoting Whitney v. Robertson*, 124 U.S. 190, 194 (1888).

Title 28 U.S.C. § 1331 gives federal courts subject matter jurisdiction over civil actions that *inter alia* "arise under" a treaty of the United States. *Id.* "A United States treaty is a contract with another nation which under Art. VI, Cl. 2 of the Constitution becomes a law of the United States." *El Paso Water Improvement Dist. No. 1 v. International Boundary & Water Comm'n*, 701 F. Supp. 121, 124 (W.D. Tex. 1988), *citing United States v.*

*Reid*, 73 F.2d 153, 155 (9ᵗʰ Cir. 1934), *cert. denied*, 299 U.S. 544 (1936).  More than the existence of a treaty, however, is required to make a lawsuit one "arising under" a treaty of the United States for purposes of 28 U.S.C. § 1331.  *Id.*  For federal question jurisdiction "arising under" a treaty of the United States, "'[c]ourts have . . . held consistently that only treaties with a specific provision permitting a private action, or one to be clearly inferred, may suffice as the basis for federal jurisdiction.  Otherwise, no cause of action is stated and no federal law [is] applicable.'"  *Baker v. Bell Helicopter/Textron, Inc.*, 907 F. Supp. 1007, 1010-11 (N.D. Tex. 1995), *quoting El Paso Water Improvement Dist. No. 1*, 701 F. Supp. at 124, *quoting Hanoch Tel-Oren v. Libyan Arab Republic*, 517 F. Supp. 542, 546 (D.D.C. 1981)(collecting cases), *aff'd*, 726 F.2d 774 (D.C. Cir. 1984), *cert. denied*, 470 U.S. 1003 (1985).

The honey supplied to HHI came from countries which, like the United States, are signatories to the United Nations Convention on Contracts for the International Sale of Goods (the "CISG").  An intent to preempt state law has been found in the introductory text of the CISG, ratified by the United States Senate on December 11, 1986 and effective as of January 1, 1988,[7] which states that "'the adoption of uniform rules which govern contracts for the international sale of goods and take into account the different

_____

[7] *In re World Imports*, 511 B.R. at 743 * n.4,

social, economic and legal systems would contribute to the removal or legal barriers in international trade and promote the development of international trade.'" *Asante Technologies, Inc. v. PMC-Sierra, Inc.*, 164 F. Supp. 2d 1142, 1151-52 (N.D. Cal. 2001)("The Court concludes that the expressly stated goal of developing uniform international contract law to promote international trade indicates the intent of the parties to the treaty to have the treaty preempt state law causes of action."). The CISG governs "contracts of sale of goods between parties whose places of business are in different States [nations]. . . ." CISG Art. 1(1)(a). "The CISG is a 'self executing treaty with the preemptive force of federal law,' which 'applies to contracts for the sale of goods between parties whose places of business are in different States . . . when the States are contracting States.'" *In re World Imports, Ltd.*, 511 B.R. at 743, *quoting It's Intoxicating, Inc. v. Marime Hotelgesellschaft mbH*, No. 11-CV-2379, 2013 WL 3973975, at *16 (M.D. Pa. July 31, 2013). It creates a private right of action in federal court. *Id., citing BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador*, 332 F.3d 333, 336 (5th Cir. 2003), *citing Delchi Carrier v. Rotorex Corp.*, 71 F.3d 1024, 1027-28 (2d Cir. 1995). It preempts state common law and the UCC. *Id.* at 743-44, *citing* Michael P. Van Alstine, *Federal Common Law in an Age of Treaties*, 89 Cornell L. Rev. 892, 959 (May 2004)(noting that the CISG "broadly displaces state law Uniform

Commercial Code in the context of international sales transaction"); William S. Dodge, *Teaching the CISG in Contracts*, 50 J. Legal Educ. 72, 72 (March 2000)("As a treaty the CISG is federal law, which preempts state common law and the UCC"); and David Frisch, *Commercial Common Law, The United Nations Convention on the International Sale of Goods, and the Inertia of Habit*, 74 Tul. L. Rev. 495, 503 (1999). As federal law, the treaty provides the governing law as long as the parties have not chosen to exclude its application. *BP Oil*, 332 F.3d at 337. To apply the domestic law of the United States rather than the CISG, the parties must "affirmatively opt-out of the CISG" and show a "clear intent" to do so. *Id.* Merely designating a choice of law is insufficient, without more, to show a clear intent to opt-out. *Id*.

Title 28 U.S.C. § 1441(c) creates what is known as "arising under" jurisdiction by permitting removal jurisdiction for "a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title)." A case may be removed when a well-pleaded complaint" presents a federal cause of action on its face or when the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006); *Leaumont v. City of Alexandria*, 582 Fed. Appx. 407, 409 (Sept. 18, 2014).

As noted, under 28 U.S.C. §1332, a defendant may remove a case

if there is (1) complete diversity of citizenship and (2) the amount in controversy is greater than $75,000, exclusive of interests and costs.   Under 28 U.S.C. § 1441(b), when original federal jurisdiction is based on diversity, a defendant may remove a state court civil action only "if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."   The doctrine of improper joinder, or fraudulent joinder,[8] prevents defeat of federal removal jurisdiction premised on diversity by the presence of an improperly joined, non-diverse defendant. *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009).   Citizenship of an improperly joined party is totally disregarded in determining the court's subject matter jurisdiction.   *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2003).

Improper joinder may be established by showing (1) actual fraud in the pleading of jurisdictional facts or (2) an inability to establish a cause of action against the non-diverse defendant in state court.   *Gasch*, 491 F.3d at 281; *Smallwood*, 385 F.3d at 573. Defendants claiming improper joinder based on the second type bear a heavy burden of showing that there is no possibility of recovery by the plaintiff against the in-state defendant, i.e., in other

---

[8] The Fifth Circuit prefers the term "improper joinder" to "fraudulent joinder" because it is more consistent with the statutory language in 28 U.S.C. §§ 1141 and 1332.   *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 571 n.1 and 572-73 (5th Cir. 2004)(*en banc*), *cert. denied*, 544 U.S. 992 (2005).

words that there is no reasonable basis for predicting that state law would allow recovery against the in-state defendant. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003); *Smallwood*, 385 F.3d at 576 ("[T]here is no possibility of recovery by the plaintiff against an in-state defendant . . . stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant. To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not."). A "reasonable basis" means more than a mere a hypothetical basis. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999)("whether the plaintiff has stated a valid state law cause of action depends upon and is tied to the factual fit between the plaintiffs' allegations and the pleaded theory of recovery").

To determine whether a plaintiff has a "reasonable basis for recovery under state law, the court may "conduct a Rule 12(b)(6)-type analysis." *Smallwood*, 385 F.3d at 573; *Anderson v. Georgia Gulf Lake Charles*, 342 Fed. Appx. 911, 915 (5th Cir. 2009). First the court should look at the pleadings to determine whether the allegations state a claim under state law against the in-state defendant. *Smallwood*, 385 F.3d at 573. If the "plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder," the court may look

-13-

beyond the pleadings and consider summary judgment-type evidence. *Georgia Gulf*, 342 Fed. Appx. at 915-16.    Discovery should be restricted and the summary inquiry should be limited to identifying "discrete and undisputed facts that would bar a plaintiff's recovery against an in-state defendant; anything more risks 'moving the court beyond jurisdiction and into the resolution of the merits . . . .'"  *Id.* at 916, *quoting Smallwood*, 385 F.3d at 573-74.  A defendant may submit and the court may consider affidavits and deposition transcripts in support of the defendant's removal petition.  *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990).  Furthermore, where the reasons for finding that there is no reasonable basis for recovery against the in-state defendant would also dispose of all claims against the diverse defendants, the entire case should be remanded because "there is no improper joinder; there is only a lawsuit lacking merit."  *Id.* at 574.

Moreover, "the existence of even a single valid cause of action against the in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court."  *Grey v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 412 & n.11 (5th Cir. 2004)(and cases cited therein).

The district court must resolve all contested fact issues and ambiguities of state law in favor of the plaintiff and remand. *Gasch*, 491 F.3d at 281. Because removal deprives the state court of an action properly before it, removal raises significant federalism

concerns and the statute is therefore to be strictly construed, with any doubt about the propriety of removal resolved in favor of remand. *Gutierrez v. Flores*, 543 F.3d 258,251 (5th Cir. 2008). Furthermore, "[i]f at any time before final judgment it appears that the district court lacks jurisdiction, the case shall be remanded." 18 U.S.C. § 1447(c).

In addition to satisfying jurisdictional requirements, a removing defendant must also satisfy procedural requirements. Under 28 U.S.C. § 1446(b),[9] failure to file for removal within 30 days of being served with a copy of the pleading or summons is a procedural defect warranting remand. *In re Shell Oil Co.*, 932 F.2d 1518, 1522 (5th Cir. 1991). If at first the case is not removable, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). The "other paper" under § 1446(b)(3) may be discovery responses, pleadings, deposition transcripts, and

---

[9] Section 1446(b)(1) states in full,

The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

attorney communications. *Still v. Georgia-Pacific Corp.*, 965 F. Supp. 878, 881 (S.D. Miss. 1997)(and cases cited therein). Furthermore "the information supporting removal in a copy of an amended pleading, motion, order or other paper must be 'unequivocally clear and certain' to start the time limit running for a notice of removal under the second paragraph of section 1446(b)." *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002).

In addition, "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). The removal is procedurally defective if such consent is not timely obtained. *Doe v. Kerwood*, 969 F.2d 165, 167-69 (5th Cir. 1992). Moreover there must be "some timely written indication" of each served defendant's consent. *Getty Oil Corp., a Div. of Texaco, Inc. v. Ins. Co. of N. America*, 841 F.2d 1255, 1262 (5th Cir. 1998).

The Fifth Circuit used to follow the first-served defendant rule, which required all defendants to join in a removal within thirty days of the date on which the first defendant was served. The now controlling 2011 amendment to 28 U.S.C. § 1446(b), adopting the last-served defendant rule, provides that each defendant has "30 days after receipt by or service on that defendant of the initial pleading or summons . . . to file the notice of removal." 28 U.S.C. § 1446(b)(2)(B). Title 28 U.S.C. § 1446(b)(2)(C) states,

-16-

"If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier served defendant did not previously initiate or consent to removal." The earlier served defendant must consent to removal within the thirty day period of the later-served defendant's deadline to remove the action. Therefore as long as the earlier-served defendant files its consent within the removing defendant's thirty day removal period, the consent is timely. *See, e.g., Gibbs v. Ocwen Loan Servicing, LLC*, No. 3:14-CV-1153-M-BN, 2014 WL 2767206, at *2 (N.D. Tex. June 18, 2014); *Felder v. Countrywide Home Loans*, No. Civ. A. H-13-0208, 2013 WL 6805843, at *2 (S.D. Tex. Dec. 20, 2013).

The plaintiff must bring a motion to remand alleging a procedural defect in removal within 30 days of the defendant's filing of the notice of the removal. 28 U.S.C. § 1447(c).

HHI maintains that its single cause of action for a declaration of the parties' rights, remedies and obligations is brought under the Texas Declaratory Judgment Action, and not federal law. Because the Texas Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code §§ 37.001-37.011, is a procedural statute rather than a substantive one, it does not apply to an action removed from Texas state court to federal district court. *Vera v. Bank of America, N.A.*, 569 Fed. Appx. 349, 352 (5th Cir. Jan. 3, 2014), *citing Utica Lloyd's of Texas v. Mitchell*, 138 F.3d 208, 210 (5th

Cir. 1998).  After removal, an action under the Texas Declaratory
Judgment Act is construed as one brought under the federal
Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. *Bell v. Bank of
Am. Home Loan Servicing LP*, No. 4:11-cv-2085, 2012 WL 568755, at *8
(S.D. Tex. Feb. 21, 2012).

The federal Declaratory Judgment Act also does not create a
substantive cause of action, but is a procedural vehicle that
permits a party to obtain an early adjudication of an actual
controversy arising under other substantive law. *Aetna Life Ins.
Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937); *Reid
v. Aransas County*, 805 F. Supp. 2d 322, 339 (S.D. Tex. 2011).  It
states, "In a case of actual controversy within its jurisdiction .
. . any court of the United States, upon the filing of an
appropriate pleading, may declare the rights and other legal
relations of any interested party seeking such a declaration. . .
." 28 U.S.C. § 2201(a).  A declaratory judgment may issue only to
resolve an actual controversy, a term identical to the requirement
in Article III of the Federal Constitution, i.e., "a dispute that
is 'definite and concrete, touching the legal relations of parties
having adverse legal interests" and that "can presently be
litigated and decided and not hypothetic, conjectural, conditional'
or based upon the possibility of a factual situation that may never
develop." *Val-Com Acquisitions Trust v. Chase Home Finance, LLC*,
428 Fed. Appx. 364, 365 (5th Cir. 2011)(citations omitted); *Orix

*Credit Alliance v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000).  The party suing for declaratory relief bears the burden to allege facts showing the existence of an actual controversy between the parties. *Id.; Orix Credit Alliance*, 212 F.3d at 896-97.

The Declaratory Judgment Act "has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).  The Act "confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287; *see also Public Affairs Assocs. v. Rickover*, 369 U.S. 111, 112 (1962)(The Act "gave federal courts competence to make a declaration of rights; it did not impose a duty to do so.").  The district court possesses "broad discretion to grant (or decline to grant) declaratory judgment." *Wilton,* 515 U.S. at 281.  "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to consideration of practicality and wise judicial administration." *Id.* at 288.  Nevertheless, it would be "uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues . . . between the same parties." *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942).

### HHI's Motion to Remand (#26)

HHI argues that this case should be remanded for three reasons

-19-

(1) some defendants served prior to removal failed to file a written consent to the removal; (2) the parties' agreements contained a mandatory venue clause[10] that constitutes a waiver of their removal rights; and (3) there is neither federal question nor diversity jurisdiction here.

In its motion HHI focuses on what it describes as a negotiated P.O. in November 2011 for over $1,129,592.00 of honey[11] between HHI and Bees Brothers. Copy attached as Ex. 1-A to #26. Although Bees Brothers disputes the enforceability of this P.O., which is not signed, for purposes of this motion the Court refers to it as the

---

[10] This Court observes that "A clause that speaks in terms of mandatory venue is treated by the Fifth Circuit as a forum selection clause." *Durant v. Compass Bank*, No. 4:13-CV-577-A, 2013 WL 4828537, at *3 (N.D. Tex. Sept. 10, 2013). The Fifth Circuit has opined in *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004)(citations omitted), *cert. denied*, 543 U.S. 1187 (2005),

> For a contractual clause to prevent a party from exercising its right to removal, the clause must give a "clear and unequivocal waiver of that right. A party may waive its rights by explicitly stating that it is doing so, by allowing the other party the right to choose venue, or by establishing an exclusive venue within the contract.
>   A party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another. For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive.

*See also, Ensco Intern., Inc. v. Certain Underwriters at Lloyd's*, 579 F.3d 442, 443-44 (5th Cir. 2009).

[11] Copy, #26, Ex. 1-A.

-20-

Bees Bothers' P.O.

Regarding its first reason for remand, HHI maintains that 28 U.S.C. § 1446(b)(2)(A), codifying the "rule of unanimity," states that in cases with multiple defendants "all defendants who have been properly joined and served must join in or consent to the removal of the action." Under the Federal Courts Jurisdiction and Venue Clarification Act of 2011 ("JVCA"), the deadline for defendants' consenting to removal is "30 days after receipt by or service on [a] defendant of the initial pleading or summons . . . ." 28 U.S.C. § 1446(b)(2)(B). Because Defendant China Industrial Manufacturing Group, Inc. ("CIMG"),[12] the last defendant served before removal, was served on July 8, 2014, HHI claims that written consent to removal had to be filed by all served Defendants by August 7, 2014, the 30th day after CIMG was served. #26, Declaration of William Mayse, Ex. 2, ¶ 4. HHI claims that the following Defendants did not file written consent to removal by that date: Alfred L. Wolff, served on 6/20/14 through the Texas Secretary of State, #26, Ex. 2-B; China Products North America, Inc., served on 6/20/14 through the Texas Secretary of State, *id.*; Premium Food Sales, Inc., served 6/20/14 through the Texas Secretary of State, *id.*; Eastin Wells, Inc., served 6/20/14 through the Texas Secretary of State, *id.*; Sunland Trading, Inc., served

---

[12] CIMG was subsequently dismissed from this suit on September 11, 2014, #57.

6/20/14 through the Texas Secretary of State, *id.*; Texas Boga, Inc., served on June 25, 2014, #26, Ex. 2-C; and the Burns Defendants, served on 6/30/14.[13]   Failure to join in removal is a procedural defect that cannot be cured by untimely notice of consent.   *Moody v. Commercial Ins. Co. of Newark, New Jersey*, 780 F. Supp. 424, 427-28 (N.D. Tex. 1992).   Therefore the removal is fatally defective and remand is required.   *Samuel v. Langham*, 780 F. Supp. 424, 427-28 (N.D. Tex. 1992); *Farias v. Bexar County Board of Trustees for Mental Health Retardation Services*, 925 F.2d 866, 871 (5th Cir.)(*citing Getty Oil Corp. Div. of Texaco, Inc. v. Ins. Co. of N. Am.*, 841 F.2d 154, 1262 (5th Cir. 1988)), *cert. denied*, 502 U.S. 866 (1991).

The venue selection clause in the Bees Brothers' P.O., Ex. 1-

---

[13] The Court observes that this case was removed not by CIMG, but by Bees Brothers on 7/18/14.   There is no indication when Bees Brothers was served to determine the 30-day deadline for earlier served Defendants to file their consent to removal.   Even if, in violation of the rule that the removal statute is to be strictly construed and any concerns about the propriety of a removal are resolved in favor of remand, one assumes that Bees Brothers filed its notice of removal on the same day it was served (thus providing the longest possible period for filing consent), because the 30th day, August 17, 2014, fell on a Sunday, the 30-day deadline for the previously served Defendants was Monday, August 18, 2014.   The docket sheet reflects that the Burns Defendants filed a joinder in the removal on the August 18, 2014 deadline (#38), but that Sunland Trading did not file its consent until 8/29/14 (#44).   CIMG filed its joinder in #38, but one day late, on August 19, 2014 (#41).   There has been no appearance by the following earlier served Defendants:   Alfred L. Wolff, Inc., China Products, NA, Inc., Eastin Wells, Inc., China Products NA, Four Seasons Food Distributing, Inc., Premium Food Sales, Inc., and Texas Boga (served on June 25, 2014 according to #36, Ex.2-C).

A, provides, "Venue for actions pursuant to or related in any way to this purchase order will be Chambers County, Texas." The language, "will be," insists HHI, identifies this clause as a mandatory one. HHI argues that Defendant waived its right to removal when it contractually agreed to a specific mandatory venue in a county that does not have a federal courthouse. *City of New Orleans*, 376 F.3d at 504; *TruGreen Landcare, LLC v. Telfair Community Ass'n, Inc.*, No. Civ. a. H-12-514, 2013 WL 2147471, at *2 (S.D. Tex. May 14, 2013)(""[W]hen a forum selection clause sets exclusive venue in a county in which no federal court is located, the clause cannot reasonably be interpreted to include a federal district court located in another county even though the designated county is within the district or division served by the federal court.'")(citation omitted); *Collin County v. Siemens Bus Servs.*, 250 Fed. Appx. 45, 52 (5th Cir. Oct. 3, 2007); *Alliance Health Group v. Bridging Health Options*, 553 F.3d 397, 401-02 (5th Cir. 2008)(where the venue provision limits a suit to a particular county, venue is proper in both the state and the federal district court if both are located in that county).

HHI insists federal question jurisdiction does not exist because none of the following three requirements for such jurisdiction is present here: (1) a federal right is an essential element of the state-law claim; (2) the interpretation of a federal right is necessary to resolve the case; and (3) the question of

federal law is substantial. *Budget Prepay, Inc. v. AT&T Corp.*, 605 F3d. 273, 278-79 (5th Cir. 2010).  "The declaratory judgment claim simply requests that the district court 'constru[e] . . . the underlying contracts and law' and does not identify any specific federal statute or regulation from which the declaratory judgment claim arises." *Id.* at 278.  Similarly HHI's prayer for relief under state-law claims arises out of the contract and not from a federal statute; i.e, it is for a determination of HHI's rights to separate and distinct duties (to defend and to indemnify) under the P.O., not under a federal statute.[14]  HHI's claim is not for damages to any Defendant's failure to indemnify, requiring construction of its rights under the contract, not for damages for any defendant's failure to indemnify.  It does not require a resolution of federal law and there is no substantial question of federal law in this case.  Nor is it for breach of contract.  Its single claim arises out of the Texas Declaratory judgment Act, codified in §§ 37.001-37.011 of the Texas Civil Practice & Remedies Code.  Bees Brothers erroneously recharacterizes HHI's claim in its Notice of Removal as follows:  "Plaintiff's request for indemnification implies Defendant breached its warranty by . . . " and cites a federal statute.

---

[14] HHI calls "flawed" Bees Bothers' argument that its obligation to indemnify and duty to defend HHI do not arise until a breach of warranty is proven in the underlying class action in Illinois, and that such proof requires interpretation of federal law.  Notice of Removal, #1, ¶ 1.

Diversity jurisdiction is also lacking because HHI is a Texas citizen, as are at least six defendants:  CIMG, Texas Boga, Tommy Burns, LP, Tommy Burns, Anna Burns, and Tommy Burns Investments, LLC.[15]   Bees Brothers neither pleads improper joinder with particularity[16] nor offers any proof that there is complete diversity of citizenship between the opposing sides.  Nor does it plead the amount in controversy requirement of § 1332 (more than "$75,000, exclusive of interest and costs").

In sum, argues HHI, this case should be remanded because not all served Defendants timely filed consent to removal, Bees Brothers waived its right to remove by agreeing to a mandatory venue in Chambers County, and the Court lacks federal question and diversity jurisdiction.

### Bees Brothers' Response (#43)

Together with HHI's Original Petition and Bees Brothers' Notice of Removal and attached exhibits (#1-1 and copies of transactions with aumber of Defendants, Exhibits A-1 through 0), Bees Brothers' response explains that Bees Brothers, which buys,

---

[15] Bees Brothers adds Brightmin Enterprizes, LLC, a Texas limited liability company, and Four Seasons Food distributors, Inc., a Texas Corporation.

[16] Fraudulent joinder "must be pleaded with particularity and supported by clear and convincing evidence."  *Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962), *cert. denied*, 376 U.S. 949 (1964).  Bees Brothers merely states, "Plaintiff uses fraudulent, improper joinder to create jurisdiction in the venue of its choice."  Notice of Removal, #1, ¶ 6.

sells, imports, and consigns raw honey from around the world, acted as consignee in arranging for HHI to purchase honey from the port in Nhava Sheva, India to be  shipped to the port in Houston, Texas and delivered to HHI in Baytown, Texas.  Bees Brothers states that as consignee, it only coordinated the transaction and was not a seller of any good.

Bees Brothers contends that HHI failed to attach a copy of the alleged indemnity agreement with Bees Brothers to the complaint, but instead attached a boilerplate indemnity agreement on an invoice to MYM Trading, LLC.  HHI endeavors to correct this deficiency by attaching the second page of the complaint's purchase order to its motion to remand.  #26, Ex. 1.  That second page requires Bees Brothers' signature, but lacks it.  HHI includes an invoice ordered from MYM Trading LLC, which HHI attributes to Bees Brothers, with a provision choosing Texas law as the governing law and the venue provision mandating venue in Chambers County.  As is evidenced by the documents attached to the Notice of Removal, HHI brought the instant suit based on similar clauses against its suppliers seeking indemnity for HHI's defense in the federal class action brought by domestic honey producers against HHI in Illinois.  HHI filed this action in Chambers County based on this clause and joined Texas residents as Defendants.

Bees Brothers insists that the Court has federal question jurisdiction here.  Most of the named Defendants (the "Supplier

Defendants") allegedly supplied honey to HHI.  The indemnity clause at issue in each P.O. is triggered only if each Supplier Defendant breaches a warranty regarding the quality of the goods or the origin of the goods, so the Court must determine whether each Supplier Defendant breached the warranty in its particular P.O. regarding the nation of origin of the honey that the particular Defendant sold to HHI.

Presenting a very different picture of this dispute than HHI and with supporting documentation, Bees Brothers represents that HHI and its criminally convicted co-conspirators are defendants in the federal class action suit, *In re Honey Transshipping Litig.*, No. 13-CV-02905 (N.D. Ill. Nov. 22, 2013), grounded in claims for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)("false designation of origin"), and challenges to the quality and origin of the goods (also at issue in the instant suit) under the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1964(a)(c), and (d), and alleging that HHI conspired with importers to avoid tariffs and antidumping duties by mislabeling the country of origin on Chinese honey and mislabeling adulterated honey as pure honey in violation of the Federal Food, Drug, and Cosmetic Act.  Bees Brothers is not a party to, nor named in the Illinois suit.  Furthermore, HHI entered into a deferred prosecution agreement #43, Ex. 5) in a criminal action, *U.S. v. Honey Holding I, Ltd*, No. 13-CR-00138 (N.D. Ill. Feb. 12, 2013),

-27-

admitting that it had knowingly mislabeled honey to avoid trade tariffs and had imported honey adulterated with antibiotics.  Ex. 5 at 14-16.  Bees Brothers was not named in the criminal action either.

Bees Brothers insists that HHI's single cause of action in the instant suit is a declaratory action for contractual indemnification based on similar clauses against its suppliers as those in the federal class action.  Notice of Removal, #1-1, at 15. The alleged indemnity clause provides,

> Acceptance of any order shall constitute an agreement upon Seller's part to indemnify and hold the Buyer, its successors, assigns and customers harmless from all liability, loss, damage and expenses, including reasonable counsel fees, incurred by buyer, or its successors, assigns, or customers by reason of the failure of goods to conform to warranties in this order. This shall include, but not be limited to loss, damage and expense incurred from product recall or rejection and any government action.  Such indemnity shall be in addition to any other remedies provided by law and shall survive acceptance of the goods and payment by buyer. Seller agrees to indemnify and save Buyer harmless and upon request defend Buyer from all loss, liability, damages and claims for damages, suits, recoveries, judgments, or executions which may be made, had, brought or recovered by reason of or on account of injury to the property of any person whomever, or to any person caused by, arising from, incident to, connected with or growing out of this purchase order.  Seller shall maintain comprehensive liability insurance, including products liability coverage, covering Seller's obligations under this order.

Notice of Removal, #1-2 at 4-5 (ordered from MYM Trading LLC, which HHI attributes to Bees Brothers without any explanation).  This agreement is in the same font, font size, and color as the rest of

-28-

the document, and is not in capital letters or emphasized by bold, italics or underlining. *Id.* Under Texas law, for a boilerplate indemnity clause to be accepted by performance, it must be sufficiently conspicuous to provide the indemnifying party with fair notice of the obligation. *Dresser Indus. v. Page Petroleum*, 853 S.W. 2d 505, 511 (Tex. 19913). Even when a document is signed, which it is not on Bees Brothers' P.O., a conspicuous clause must have a heading that sets it off from other headings in the document and the clause must be set off from the rest of the text in the document. Tex. Bus. & Com. Code § 1.201(a)(1); *U.S. Rentals v. Mundy Serv. Corp.*, 901 S.W. 2d 789, 792-93 (Tex. App.--Houston [14[th] Dis.] 1995, writ denied); *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W. 2d 705, 708 (Tex. 1987). Furthermore this purported indemnity agreement nowhere states that Bees Brothers sold Chinese honey to HHI pursuant to HHI's incorporated purchase orders. Furthermore, HHI permitted a federal undercover agent to acts as its Director of Procurement, beginning June 2011, when HHI placed the orders that are the basis of this action. See Ex. 5, HHI's Deferred Prosecution Agreement.

Bees Brothers points out and lists the complex, interrelated provisions of the Untied States Code and Code of Federal Regulations that control the requirements and parameters of the designation of national origin for goods entering the United States and United States customs law, over violations of which federal

courts have exclusive subject matter jurisdiction.  The quality and origin of the goods at issue here are already pending on federal questions in the class action suit in federal court in Illinois. Moreover HHI's payer for indemnification implies that Bees Brothers breached its warranty by engaging in a pattern of racketeering activity in violation of RICO, 18 U.S.C. §§ 1964(a), (c), and (d). #1-1 at 8.  The class action RICO claim against HHI rests on the claim that HHI's mislabeling of honey was the conspiracy's overt act.  *Id.*   Federal treaty, customs, and advertising law will determine whether this overt act occurred.  Since the instant suit's cause of action arises under the Constitution, treaties, or laws of the United States, this Court has federal question jurisdiction over each of the alleged overt acts.

Furthermore, argues Bees Brothers, although HHI seeks indemnification under an alleged breach of contract, it must prove that Bees Brothers breached the contract by violating federal law; whether a federal law was violated is a federal question and requires interpretation of a federal law by a federal court.  Even when the complaint alleges only state law claims, there may still be federal question jurisdiction.  Here HHI seeks indemnification under an alleged breach of contract, which in turn is allegedly based on numerous violations of federal law that are  also being litigated in an Illinois federal court that claims federal subject-matter jurisdiction over them.  The question in dispute here, i.e.,

whether a violation of federal law occurred, is a question of federal law that requires the interpretation of a federal court. The same is true of the indemnification claim implying that Bees Brothers breached its warranty by importing honey from other countries in violation of customs law.

As discussed previously, 28 U.S.C. § 1331(a) provides federal subject matter jurisdiction over civil actions that arise under a treaty of the United States.  Bees Brothers also maintains that this action involves issues covered by the substantive law of CISG, Apr. 11, 1980, S. Treaty Doc. No. 98-9 (1983), a treaty ratified by the U.S. Senate in 1986.  As indicated *supra*, this Court has federal subject-matter jurisdiction over cases relating to the CISG.  *BP Oil International Ltd. v. Empresa Estatal Petroleos de Ecuador*, 332 F.3d 333, 336 (5th Cir. 2003)(CISG "creates a private right of action in federal court" and "applies to contracts of sale of goods between parties whose places of business are in different states [nations] . . . [w]hen the States are Contracting states.' CISG art. 1(1))").  The honey in this dispute is a tangible good and not a specifically excluded good pursuant to CISG, art. 2.  As the documents show, an Indian seller sold it to an American buyer, HHI, with Bees Brothers acting as consignee in the shipment from New Delhi, India to Houston, Texas and HHI's facility.  HHI has alleged that the honey is transshipped and originated in China, so the parties to the sale are citizens of two different contracting

-31-

states, thus triggering the application of the CISG.[17]   Ex. 1, Decl of Juan Pablo Baggini, Managing Director of Bees Brothers; Ex. 2. Decl. of Santiago Herrero, Sales Manager of Bees Brothers; Ex. 3 Bill of Lading; Ex. 4, Commercial Invoice.   The P.O. has choice of Texas law provision; Bees Brothers argues that this choice of law of Texas, a federal state of the United States, in turn a CISG signatory, requires application of the CISG.  CISG, art. 1(1)(b). So too does CISG govern what constitutes a material breach of express warranty or what breaches are curable.  CISG, arts. 35(1), 25, 34, 37, 47.   Moreover Bees Brothers anticipates that HHI will try to prove that Bees Brothers was the seller of the honey in an international sale of goods; that issue requires applying the CISG's definition of a seller.

Furthermore the Illinois federal class action's claim of false advertising under the Lanham Act in the mismarking of Chinese honey as honey of other countries' origin constituting a false designation of origin under 15 U.S.C. § 1125(a)(1), invokes federal question jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a), conferring original jurisdiction to federal district courts over actions arising under the trademark laws, including the Lanham Act.  *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660,

---

[17] Bees Bothers further states that the contractual choice of the law of Texas, a federal state of the United States, in turn a CISG signatory, supports application of the CISG under the CISG's art. 1(1)(b).

669-71 (Fed. Cir. 1988), *cert. denied*, 488 U.S. 968 (1988). This Court must decide whether the purported mismarking of the origin of the honey in dispute constituted false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1), a determination of a federal statute.

Bee Brothers also argues that improper joinder fails to defeat diversity of jurisdiction here because HHI's claims against the nondiverse Defendants are not related to its claims against the other Defendants. A case can be removed even though a nondiverse party is present if the removing defendant shows that the nondiverse party was not properly joined. *See, e.g., Salazar v. Allstate Tex. Lloyd's, Inc.*, 455 F.3d 571, 574 (5th Cir. 2006)("In the paradigmatic fraudulent joinder case, a plaintiff sues a nominal nondiverse/in-state defendant along with a diverse foreign defendant in an effort to make sure its claims against the diverse defendant state in state court. . . . [I]n a multi-defendant case, a nominal defendant can be disregarded in the jurisdictional analysis."); *Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373, 376 (5th Cir. 2006). Joinder of parties, here of nondiverse Defendants, is only proper where the claims arise from the same transactions or occurrences and a common issue of law or fact arises; otherwise parties could be joined in an effort to deprive diverse defendants of their right to removal. Fed. R. Civ. P. 20(a); *In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002). Bees Brothers contends that because HHI's claims against

-33-

each nondiverse Defendant are unrelated to HHI's claims against the others and have no real connection to each other, the nondiverse Defendants should be disregarded for purposes of diversity jurisdiction.  There is no showing that each agreement is identical to another, or under what circumstance it was accepted, or if each nondiverse Defendant may have subsequently rejected indemnification by its own preprinted invoice terms.  Bees Brothers identifies a number of differences among the various agreements with different Defendants.  #43 at p. 17.  Furthermore Bees Brothers asserts that the amount in controversy under the indemnity agreement potentially equals the federal class action litigation judgment, jointly and severally against HHI and is sufficient to satisfy the amount in controversy requirement.

As for the venue provision at issue here, "Venue for actions pursuant to or related in any way to this purchase order will be Chambers County, Texas," with similar clauses in the other P.O.s in dispute here, like HHI, Bees Brothers relies on this Court's opinion in *TruGreen Landcare*, 2013 WL 2147471, but comes to the opposite conclusion about its holding.  In *TruGreen,* 2013 WL 2147471 at *2, the Court determined that the "key issue" was whether the venue selection clause was mandatory ("exclusive") or permissive.  Agreeing with HHI that it is well established that such boilerplate venue selection clauses do not waive removal to federal court unless the waiver is "clear and unequivocal," Bees

-34-

Brothers emphasizes this Court's determination that the venue selection clause in dispute in *TruGreen*, i.e., "parties stipulate and agree that venue for any action brought hereunder shall proper[ly] lie in the state and federal courts situated in Fort Bend County, Texas,"[18] was permissive, not mandatory, since the language did not clearly indicate that the parties intended to declare Fort Bend as the exclusive venue. *TruGreen*, 2013 WL 2147471 at *1. In *TruGreen* the Defendant argued that if the selected venue county lacked a federal district court, the clause operated as a waiver of federal venue and the case should be dismissed for improper venue. *Id.* at *1*, citing Collin County v. Siemens Bus. Servs., Inc.*, 250 Fed. Appx. 45, 52 (5th Cir. 2007)(when exclusive forum is a county that does not have a federal courthouse, the parties to the forum selection clause have waived their rights to seek redress in federal courts); *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 76 (2d Cir. 2009)(holding that when forum selection clause names a county without a federal court as the exclusive forum, the parties have waived their right to federal court). Opining that "[a] clause is permissive if it authorizes filing in a designated forum but does not foreclose other fora," *TruGreen*, 2013 WL 2147471 at *1, this Court cited *Breakbul Transp., Inc. v. M/V Renata*, Civ. A. No. H-07-2985, 2008 WL 1883790, at *2

---

[18] The Court observes that the venue provision in the disputed Bees Brothers' P.O. does not mention federal court.

(S.D. Tex. Apr. 25, 2008), for the proposition that a "forum selection clause providing merely that a particular court 'shall have jurisdiction' over the controversy has been found to be permissive because it does not foreclose the possibility that other courts may also have jurisdiction." *TruGreen,* 2013 WL 2147471 at *1, *citing Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127-28 (5th Cir. 1994)("Even though the clause now before us uses 'shall,' this clause need not necessarily be classified as mandatory. . . . The only thing certain about the clause . . . is that the parties consented to the personal jurisdiction of the Zurich courts. Beyond that . . . the language does not clearly indicate that the parties intended to declare Zurich to be the exclusive forum . . . ."); and *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955, 956-57 (5th Cir. 1974)(The venue provision ("This agreement shall be construed and enforceable according to the State of New York and the parties submit to the jurisdiction of the courts of New York") does not clearly limit actions under the contract to courts of a specified locality but is subject to two opposing but reasonable interpretations, i.e., that disputes would be litigated only in state or federal courts in New York State or that Keaty intended to submit to the jurisdiction of New York courts if he was sued there but that he did not intend to waive his right to sue or be sued elsewhere; where there are two divergent but reasonable interpretations of a contract provision, the preferred

interpretation is that "which operates more strongly against the parties from whom (the words) proceed.").[19]  This Court in *TruGreen* additionally highlighted the fact that "[t]he forum selection clause contains none of the requisite 'exclusivity language' ["exclusive," "sole," or "only"] nor provides that the state courts in Fort Bend County are to be the exclusive venue.  Instead it expressly contemplates that a federal venue is appropriate."  *Id.* It further reasoned that because the Southern District of Texas includes Fort Bend County and because it is a proper venue under the general venue statute, 28 U.S.C. § 1391(b), venue was proper in the Southern District of Texas.  *Id.* at *3.  It rejected the defendant's arguments that the venue clause referred to a county, not a venue, and that because the county lacked a federal district court, the venue clause constituted a waiver.  Bees Brothers maintains that under *TruGreen*'s holding, this Court has jurisdiction in the instant suit because Chambers County is in the jurisdiction of the Southern District of Texas.

### HHI's Reply (#46)

HHI asserts four reasons why Bees Brothers' Response fails to defeat HHI's motion to remand.

First HHI argues that Bees Brothers has failed to meet its burden of pleading and proving the citizenship of all parties,

---

[19] *In accord, City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d at 504-06.

including its own, to prove diversity jurisdiction exists here.  A defendant removing on diversity grounds must distinctly and affirmatively assert the citizenship of the parties to the suit. *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988).  The citizenship of a LLC is determined by the citizenship of all its members.  *Harvey v. Grey Wolf Drilling Ci.*, 542 F.3d 1077, 1080 (5th Cir. 2008).  Bees Brothers fails to identify each of its members or their citizenship, nor does it identify the general and limited partners or HHI and their respective citizenship.

Second, Bees Brothers fails to meet its burden of proving improper joinder, a narrow exception to the rule of complete diversity.  *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011)("To establish improper joinder, the removing party must demonstrate either:  '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"), *quoting Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)(*en banc*).  Although Bees Brothers attempts to satisfy the requirements of improper joinder by contending that the indemnity clause in the P.O. is unenforceable because it does not satisfy the conspicuous requirement, as discussed, more is at issue in this case than the indemnity provision.  Bees Brothers has not shown there is no possibility that HHI can recover against the

Texas Defendants.   Its attack is one on the merits of the claim rather than in inquiry into the propriety of the joinder of in-state Defendants.

As for the unanimity of consent rule Bees Brothers does not address the deadline for prior served Defendants to consent to removal and the failure of all served Defendants to consent to removal, timely or otherwise.   Not only did may fail to file a written consent by the deadline, but many never filed consent.

Finally HHI reiterates that the mandatory venue provision is a waiver of Bees Brothers' right to remove.   In *TruGreen*, the venue provisions stated that "any action hereunder shall proper[ly] lie in the state and federal courts situated in Fort Bend County," and it concluded that this language identified Fort Bend County as a proper venue, but did not limit other proper venues.   2013 WL 2147471 at *2.   In contrast, the provision in Bees Brothers' P.O. states that venue "will be" (not may be, might be, or could be) in Chambers County and the word "proper" is not used.   "Will" does not leave open the possibility of another venue.   When the exclusive forum is a county without a federal courthouse, the parties to the forum selection clause waive their rights to seek relief in federal court.   *Collin County v. Siemens Bus. Servs., Inc.*, 250 Fed. Appx. 45, 52 (5th Cir. 2007).

### Court's Decision

This case is problematic in numerous ways, many of which do

-39-

not relate to the removal issues.  As a threshold matter, the Court finds that many of Bees Brothers' arguments go to the merits of claims against HHI, which are pending in the Illinois class action and not in this litigation.  The Court's only focus here is whether Bees Brothers' removal was proper and thus whether this Court has subject matter jurisdiction to construe and declare the parties' the rights, remedies, and obligations under their respective P.O.s, all of which select Texas law and contain a provision for venue in Chambers County.

The Court emphasizes the long established precept that "[b]ecause removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'" *Gutierrez v. Flores*, 543 F.3d 258,251 (5th Cir. 2008), *quoting In re Hot-Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007).  As the removing Defendant, Bees Brothers bears the burden to show that the subject matter jurisdiction exists and that removal was proper. *Manguno*, 276 F.3d at 723.  Because Bees Brothers has failed to do so in the following ways, the Court concludes that remand is required.

With regard to procedural deficiencies in the removal, the Court agrees that Bees Brothers has failed to show that all previously served Defendants who have appeared in this action filed timely written consents to the removal; specifically the record

-40-

demonstrates that CIMG and Sunland Trading filed late consents. See footnote 13 of this Opinion and Order.

Regarding diversity jurisdiction, HHI perfunctorily states in a footnote in its motion to remand that "it is a Texas citizen and there are at least six Texas citizens named and served as of the date of removal--China Industrial Manufacturing Group, Inc., Texas Boga, Inc., Tommy Burns LP, Tommy Burns, Anna Burns and Tommy Burns Investments, LLC."  #26 at p. 23, n.1. The original Petition identifies "[u]pon information and belief" Brightmin Enterprizes, LLC as a "Texas limited liability company' with "one or more of its members a citizen of the State of Texas."  A limited liability company's citizenship is determined by the citizenship of all of its members. *Alsobrook v. GMAC Mortg., LLC*, 541 Fed. appx. 340, 342 (5th Cir. July 31, 2013), *citing Harvey v. Grey Wolf Drilling Co.*, 542 F.23d 1077, 1080 (5th Cir. 2008).  As noted earlier, a corporation is a citizen of either the state in which it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). *Tewari De-Os Systems, Inc. v. Mountain States/Rosen, Ltd. Liability Corp.*, 757 F.3d 481 (5th Cir. 2014). About HHI and BBC, both limited liability companies, there is no evidence in the record of the citizenship of their members other than HII's conclusory claim in that footnote. Instead, the Original Petition, at p.1, asserts, "Plaintiff is a limited partnership organized under the laws of the State of Texas;" that

a jumbled statement does not demonstrate that it is properly a Texas citizen.  The Original Petition does not show, nor does Bees Brothers provide any evidence regarding essential information about, the citizenship of most Defendants, and thus it fails to evidence that the citizenship of HHI is completely diverse.  The Petition does claim that National Honey, Inc. d/b/a National Commodities and Four Seasons Food Distributors are citizens of Texas, but merely asserts that other Defendants "do business" in Texas.  If any of the defendants is a Texas citizen, since HHI claims that one of its members is a citizen of Texas, and Bees Brothers has not shown otherwise, the removal was improper under 28 U.S.C. § 1441(b)(2)("A civil action otherwise removable solely on the basis of jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.").

The Court agrees with HHI that Bees Brothers has also not pleaded particular facts establishing improper joinder of any alleged in-state Defendants by showing that in its Original Petition HHI did not and cannot state a claim under Texas state law against them.

Regarding Bees Brothers' contention that federal question jurisdiction exists here, the Court finds that there is no federal right asserted on the face of the Original Petition, which seeks

-42-

only a declaration requiring the Court to construe a contract. Construction of a purchase order between private parties is a matter of state law, and the various P.O.s state that construction "will be in accordance with the laws of the state of Texas." #26, Ex. 1-A.  Where the case deals with a contract negotiated and performed in several states and involves parties from different states, "'a federal court adjudicating a state law matter must apply the law of the forum, including that state's choice-of-law rules.'" *Austin Elcon Corp. v. Avco Corp.*, 590 F. Supp. 507, 511-12 (W.D. Tex. 1984), *quoting Systems Operations, Inc. v. Scientific Games Development Corp.*, 555 F.2d 1131, 1136 (3d Cir. 1977). Contract construction is a matter of state law.  *Restatement (Second) Conflict of Laws* § 187 is applied by Texas to determine the enforceability of choice-of-law provisions. *DeSantis v. Wackenhut Corp.*, 793 S.W. 2d 670, 677 (Tex. 1990)(citing § 187 and UCC, Tex. Bus. & Com. Code Ann. § 1.105(a); *Aboussie v. Aboussie*, 441 F.2d 150, 155 n.6 (5th Cir. 1971)("[T]he Texas conflict of laws rule is that it will apply the law of the state expressly or by implication agreed upon by the contracting parties to govern . . . ."). Section 187 provides,

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even

-43-

if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state law has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 187, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Here the various P.O.s. expressly state that Texas law will apply, HHI claims Texas citizenship, the honey in the P.O.s is to be delivered to and paid for in Texas, and none of the parties has objected to the choice of Texas law.

The Court disagrees with Bees Brothers' claim that the federal causes of action in the federal class action suit are at issue here.  The P.O.s can be construed without any reference to the legal issues in the class action.  At most, it could reasonably be argued that to have an actual controversy as defined under Article III of the Constitution for this action's declaratory action, HHI would first have to be found liable on at least one of the claims in the class action.  Then res judicata would not bar a declaration of the rights, remedies, and obligations of the Defendants in this suit.

Since no federal claim is stated, the Court examines that

argument that the CISG preempts the state law claims.  Here, too, the CISG, if applicable, would apply to the state claims for damages in the federal class action, not to the declaration of rights under the P.O.s at issue here.

In sum, because "any doubt about the propriety of removal must be resolved in favor of remand," *Gasch*, 491 F.3d at 281-82, the Court

ORDERS that HHI's motion to remand (#26) is GRANTED and this case is REMANDED to the 334th Judicial District Court of Chambers

**SIGNED** at Houston, Texas, this  23rd  day of  January , 2015.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE